**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANIEL C. DECARLO, SB# 160307
E-Mail: Dan.Decarlo@lewisbrisbois.com
DONALD M. GINDY, SB# 45228
E-Mail: Donald.Gindy@lewisbrisbois.com
JOSHUA S. HODAS, SB# 250802
E-Mail: josh.hodas@lewisbrisbois.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff,
VBCONVERSIONS LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WEST REGION

| | |
|---|---|
| VBCONVERSIONS LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO. 2:14-cv-2072**<br><br>**COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT;**<br>2. **VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, §1201(a)**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

4816-9972-9175.2

Plaintiff, VBConversions LLC, by and through its attorneys of record, herby brings its Complaint against Defendants Tyler Technologies Inc. and Does 1-10, alleging, as follows below, that Defendants are liable to it for copyright infringement and violation of the Digital Millennium Copyright Act.  This action is based upon a Federal question and seeks damages and injunctive relief on the basis of Defendants' unauthorized copying of Plaintiff's copyrighted software and their bypassing of technological means put in place to control access to that software.

## JURISDICTION AND VENUE

1.   This action arises under the Copyright Act of the United States, 17 U.S.C. § 101 and § 501, *et seq*. and the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a).

2.   Jurisdiction is further founded upon the Defendants' acceptance of an End User Licensing Agreement ("EULA") in connection with their use of *VB.Net to C# Converter* (the "Copyrighted Software"), which license contains a forum-selection clause whereby the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.  A true and correct copy of the EULA is attached hereto as *Exhibit* "C," and is incorporated by reference.

3.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) & § 1400(a).

4.   Venue is also proper as the result the Defendants' acceptance of the forum-selection clause in the EULA which designates the County of Los Angeles, State of California, as the location for hearing any dispute arising in relation to use of the Copyrighted Software.

## PARTIES

5.   VBConversions LLC (hereinafter "VBC") is a California limited liability company, with its principal place of business located in Santa Monica,

1
COMPLAINT

4816-9972-9175.2

California. VBC is a software developer and engages in the licensing of its software products on the Internet.

6. Plaintiff is informed and believes and thereon alleges that Tyler Technologies Inc. ("Tyler") is a Delaware corporation, with its principal place of business located at 5949 Sherry lane, Dallas, Texas 75225. On information and belief, Plaintiff alleges that Tyler is a developer and provider of software, particularly for use in the public sector.

7. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or other entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the Defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agents and servants or joint venturers/partners-in-concert of the other Defendants, and acted within the course and scope of said agency and employment or within the parameter of their agreement.

8. Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, Defendants, and each of them, have engaged in and continue to engage in the purchase and/or sale of goods and/or services within the County of Los Angeles, State of California and have generally directed their activities at California.

9. Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, Defendants and DOES 1-10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiff further alleges that said Defendants have a non-delegable duty to prevent or cause

2
COMPLAINT

4816-9972-9175.2

such acts and behavior described herein, which duty Defendants failed and/or refused to perform. Plaintiff further alleges, upon information and belief, that each act, transaction or event alleged was directed, hosted, served and routed through computers, and a computer communication network, operated and maintained by Defendant Tyler.

## GENERAL ALLEGATIONS

**Background**

10. Visual Basic (VB) is a computer programming language developed and sold by Microsoft Corporation since as early as 1991. Historically, it has been among the most popular programming languages for use in business programming and has long had one of the largest user bases of any programming language. There is, therefore, a vast amount of software that has been developed over the years in VB. Many of these VB programs are of significant complexity and size.

11. In or around 2001, Microsoft Corporation introduced an "evolved" version of Visual Basic called Visual Basic .Net (VBN) oriented towards modern, Internet programming tasks.

12. Since 2000, however, the language C# (pronounced "C-Sharp"), also developed by Microsoft Corporation (but adopted as an international standard) has taken the place of VB for much business programming, particularly that oriented toward the Internet. C# is intended to be a simple, modern, general-purpose, programming language. The language is intended for use in developing software components suitable for deployment in many different environments. So, while VB and VBN are largely limited to the Windows operating system, C# compilers exist for most major computer operating systems, including Mac OS, Linux, Windows, Solaris, etc. C# is suitable for writing applications for both hosted and embedded systems.

3
COMPLAINT

4816-9972-9175.2

**The Copyrighted Software**

13. Because of the large body of legacy software existing in VB and VBN, companies seeking to modernize their software often find that it is most practical to undertake a process of converting their existing VB/VBN code to C#. Paying a programmer to make the conversion line-by-line by hand can be extremely costly, however.

14. In particular, Plaintiff is informed and believes and thereon alleges that a skilled computer programmer very familiar with both VB/VBN and C#, working purely by hand could typically, at best, convert 100 lines per hour from VB/VBN to C#.

15. Plaintiff, therefore, developed *VB.Net to C# Converter* to automate part of the conversion process, enabling conversions to be done substantially more quickly, and, therefore, at significantly lower cost.

16. *VB.Net to C# Converter* (the "Copyrighted Software.") was registered with the Register of Copyrights on or about August 9, 2012, and was assigned registration TX 6-425-720. A copy of the registration is attached hereto as Exhibit "A," and is incorporated by reference. A copy of the registration of the assignment transferring all rights in the Copyrighted Software to our client is attached hereto as Exhibit "B," and is incorporated by reference.

**The Licensing of the Copyrighted Software**

17. VBC distributes and licenses the Copyrighted Software online at the Internet web site vbconversions.com.

18. As discussed above, when the Copyrighted Software is downloaded and run, the user must affirm an End User Licensing Agreement before the program can be used.

19. In spite of the complexity of the system, the Copyrighted Software is licensed under extremely reasonable terms. VBC employs the so-called shareware

4
COMPLAINT

4816-9972-9175.2

1  model, whereby an interested user is permitted to download a time-and-feature-
2  limited version of the Copyrighted Software in order to test it to see if it is suitable
3  for his or her needs. (*See* 37 C.F.R. § 201.26)  (Shareware programs offered in such
4  time- or function-limited forms are often referred to as "trialware" or "demoware.")

5  20. As initially downloaded, the Copyrighted Software may be used for up
6  to fifteen (15) days.  When this time limit is reached, the Copyrighted Software is
7  disabled and ceases to function. Further, during that period, the Copyrighted
8  Software will only function to convert VB/VBN projects consisting of up to two-
9  thousand (2,000) lines of code.  It will not process larger projects.

10  21. If the user is satisfied with the Copyrighted Software and wishes to
11  continue to use it beyond the time and scope limitations applied to free use, the
12  EULA requires the user to apply for a full-use license by paying the standard
13  market fee.  At that point, the user is provided an "unlock code" (or key) that
14  removes the restrictions in the Copyrighted Software.

15  **Cracking and "Warez" Sites and Unlicensed Use**

16  22. Over the years, unfortunately, a broad array of so-called "cracking
17  sites" have appeared on the internet that are capable of generating and providing
18  users with unauthorized unlock codes for the Copyrighted Software and many other
19  shareware programs offered in the trialware/demoware model. These fraudulent
20  registration codes are used in order to gain unlicensed unlimited access to the
21  subject program without the payment of the license fee to, or proper registration
22  with the developer/copyright owner..

23  23. A similar number of so-called "warez sites" have sprung up offering
24  unauthorized "pre-cracked" copies of copyrighted programs for download and
25  unlawful unlimited use.  The "pre-cracked" copies are generally created by
26  modifying the object code of the copyrighted programs to entirely bypass the part of
27  the code that checks whether the key entered is a legitimate one.

28

5
COMPLAINT

4816-9972-9175.2

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

24. Despite its best efforts, VBC has not been able to stem the tide of unscrupulous users who have used these means to gain unauthorized unlicensed unlimited access to the Copyrighted Software.

25. Such users have used the Copyrighted Software without license (and without any payment to VBC) to quickly convert vast amounts of VB/VBN code to the more modern and desirable C#. Such users thereby obtain significant financial benefit through their illicit, unlicensed infringing use.

**Collection of Information Concerning Infringement**

26. In self-defense, VBC has adopted a tracking system whereby the Copyrighted Software reports its use to VBC's servers and to servers maintained by a third-party registration-tracking company, Hitek Software LLC of Goleta, CA ("Hitek").

27. VBC is, thereby, able to record the details of substantially every instance of use of the Copyrighted Software (both legitimate and unauthorized copies). The information recorded identifies the date and time of the use, the public and private Internet Protocol ("IP") address of the computer on which the use occurs, the identity of the user of that computer (as recorded on that computer's operating system), the owner or organization responsible for operating the computer, and other data which is integral to proof of infringement.

28. The collection of this usage data by the Copyrighted Software and its transmission to VBC and Hitek is acknowledged and affirmed by the user as part of the EULA when the Copyrighted Software is first used.

**SPECIFIC ALLEGATIONS OF DEFENDANTS' INFRINGEMENT**

29. VBC and Hitek have collected information demonstrating that Defendants bypassed the technological measures controlling access to the full-featured version of the Copyrighted Software and then used the Copyrighted

Software at least 132 times to convert at least 2,593,824 lines of Visual Basic code to generate at least 3,246,143 lines of C# code.

30. To place this number into perspective, there are roughly fifty (50) lines of text on a typical page of program code. The quantity of C# code illegally generated by Defendants using the fraudulently-registered Copyrighted Software is, therefore, equivalent to over 50,000 pages of code.

31. Defendants used the Copyrighted software to convert and adapt this code from VB to C# without VBC's knowledge, license or consent.

32. Even if a programmer could sustain a 100-line per hour manual translation rate over a long period (which is questionable), it would take nearly 26,000 programmer hours to accomplish such conversion.

33. The specific information related to the unlicensed infringing use is set forth as follows:

**Tyler's Acceptance of the EULA**

34. On information and belief, on or about October 17, 2011 at approximately 9:30a.m. CST, a user employed by Tyler, identified as "Syed.Fahad" using a computer identified as "CHI-SFAHAD" in the domain "CHI-SFAHAD" installed and launched the capability-limited copy of the Copyrighted Software. The computer used had an external IP address of 70.91.247.49 and an internal address of 192.168.11.9.

35. At that time the Copyrighted Software first ran, the user was presented with and accepted the EULA. The Copyrighted Software reported the acceptance of the EULA to VBC's server.

**Tyler's Hacking and Use of the Copyrighted Software**

36. The user then proceeded to register the Copyrighted Software under the name "Syed Muhammad Fahad" and email address "uknowsana@gmail.com".

37. When asked to enter the key he had purchased from VBC, he instead entered "P0S65-80U92-DJ239-2500H-5Q828".

7
COMPLAINT

4816-9972-9175.2

38. While this is a valid key which will serve to unlock the Copyrighted Software, it belongs to a user in Quebec, Canada who purchased it in 2007. On information and belief, this code has either been stolen or reverse engineered and published on a crack site, as it has been encountered in numerous infringements.

39. It is evident that, with the purpose of avoiding paying the licensing fee for the Copyrighted Software, the user searched the Internet and illicitly acquired this code which he then entered into the registration system.[1]

40. The EULA, which the user had just affirmed, specifically bars the use of illicit keys. The use of such a key amounts to a circumvention of technological measures in place to control access to the full version and, therefore, is a direct violation of the DMCA.

41. Having violated the terms of the EULA, any license to the user and Tyler was revoked, and any subsequent copies of the Copyrighted Software made, including in-memory copies made when the Copyrighted Software was run, were unauthorized.

42. Having illegally unlocked the Copyrighted Software on the 17th, two days later, on October 19, 2011 at approximately 11:45 a.m., the user tested his exploit by using the Copyrighted Software to convert a 656,215-line Visual Basic file named "MZKObj.vbproj" to 840,107 lines of C# code. This one conversion processed over three-hundred times as many lines of code as allowed with the trialware version.

---

[1] Tyler had already evaluated and used the Copyrighted Software in the past. In or about November 2006 a user named "syed abu fahad" working for "mazikpakistan" made extensive (but allowed) use of the trialware version of versions 2.04 and 2.06 of the Copyrighted Software to evaluate its usefulness. In January 2010, a user with the same credentials unsuccessfully attempted to unlock version 2.26 of the Copyrighted Software first by entering a string of 25 "1"s, then by entering 25 "a"s.

8
COMPLAINT

4816-9972-9175.2

43. Beginning at approximately 3:10 p.m. that afternoon, and continuing for over an hour, the user used the illegally cracked program to convert at least 69 Visual Basic modules containing at least 982,329 lines of Visual Basic code to 1,220,007 lines of C# code.

44. Beginning again at approximately 6:30 p.m. that evening, and continuing for another hour, the user employed the illegally cracked copy of the Copyrighted Software to convert at least 62 modules containing at least 955,280 lines of Visual basic code to 1,186,029 lines of C# code.[2]

**Evidence that the Infringement was Committed by Tyler**

45. As noted above, each time the Copyrighted Software is run or performs a significant task, it collects a variety of information about the computer, user and usage and transmits this to VBC servers. Based on the information collected from this user's usage, it is clear that his infringement occurred in the course and scope of his work for Tyler, which was the ultimate beneficiary of his infringement, and responsible for the acts of its employee.

46. While the user provided the email address uknowsana@gmail.com when he cracked the Copyrighted Software, the Copyrighted Software also requests email addresses from Windows when the Copyrighted Software is used. In this case, Windows reported back that the user had the following email addresses: fahadsomnia7@live.com, fatima_shamim246@hotmail.com, smfahad047@hotmail.com, and, most importantly, Syed.Fahad6@tylertech.com.

47. Further, each time a user converts a file of Visual Basic source code, the Copyrighted Software collects certain information about and from the original

---

[2] Throughout the afternoon and evening sessions, the computer had an external IP address of 67.176.156.90 and an internal IP address of 10.197.55.24. Other than that, the user and computer information recorded at VBC's servers was identical to that used at the time of registration and initial testing.

9
COMPLAINT

4816-9972-9175.2

file. In this case, several of the files converted included copyright notices identifying Tyler as the owner of the source code, or otherwise referencing Tyler or TSIS (which is Tyler's acronym for Tyler Student Information System). Many other files similarly implicate Mazik, a company that develops student information systems and was acquired at least in part by Tyler in 2006.[3]

**VBC's Damages and Demand**

48. The evidence is unequivocal that Tyler, by and through its employee(s), has willfully infringed VBC's rights in the Copyrighted Software. The user of the Copyrighted Software was identified by a Tyler email address. Many of the source code files converted carried Tyler (or Mazik) copyright notices or related indicia of ownership.

49. That the user obtained and introduced an illicit key code after first affirming the EULA, which set forth legitimate use under the license, is *per se* evidence of Tyler's willful intent to circumvent the technological measures protecting the Copyrighted Software and to make infringing copies and use of the Copyrighted Software.

### FIRST CLAIM FOR RELIEF

*Violation of 17 U.S.C.§106 &501, et seq., Copyright Infringement*

50. Plaintiff incorporates by reference paragraphs 1 through 49 as if the same were set forth fully herein.

51. The pre-cracked version of Copyrighted Software employed by Defendants is an unauthorized derivative work of the Copyrighted Software.

---

[3] The 2006 and 2010 uses, referred to above, of the then-currrent trialware versions of the Copyrighted Software, and attempt to crack same, emanated from Mazik's facilities in Pakistan, thus further linking that use with this one.

10
COMPLAINT

4816-9972-9175.2

52. In downloading the pre-cracked version of the Copyrighted Software from the Internet, Defendants made an unauthorized copy, thereby violating Plaintiff's right under 17 U.S.C.§106 to control the creation of copies of the Copyrighted Software and derivatives.

53. Similarly, in executing the pre-cracked version of the Copyrighted Software, Defendants repeatedly made unauthorized in-memory copies of the Copyrighted Software.

54. Plaintiff is informed and believes and thereon alleges that the computer involved in this illegal copying belonged to Tyler and that the user who downloaded and ran the unauthorized pre-cracked version of the Copyrighted Software was employed by Tyler.

55. Plaintiff is informed and believes and thereon alleges that Defendants acted together in the infringement and are jointly and severally liable for all damages arising therefrom.

56. Defendants actions were willful and deliberate in that, as Plaintiff is informed and believed and thereon alleges, Defendants, having used the time-and-feature-limited version of the Copyrighted Software to determine the usefulness of the Copyrighted Software and its value to them, then deliberately sought out and illegally copied the pre-cracked version of the Copyrighted Software so as to avoid payment of the license fee required to obtain authorization to further copy and use the Copyrighted Software.

57. Assuming arguendo that one could convert at the rate of 100 lines per hour, it would require nearly 1,925 programmer hours to compete the same job by hand that Defendants were able to complete using Plaintiff's Copyrighted Software in a few hours. Further, assuming that the average programmer earns approximately $100.00 per hour doing conversion work, the saved costs and expenses avoided by

Defendants as the result of unauthorized access, copying and usage amount to at least $192,500.

58. The full amount of actual damages, including profits attributable to the infringement, is unknown to Plaintiff at this time, but shall be determined according to proof at time of trial. Plaintiff, in the alternative, may elect statutory damages of up to $150,000.00—as allowed by 17 U.S.C. § 504(c)(2)—on the basis of Defendants' willful and deliberate infringement of its rights.

## SECOND CLAIM FOR RELIEF

*Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1201(a))*

59. Plaintiff repeats and re-alleges paragraphs 1 through 58, as if the same were set forth fully herein.

60. At all times mentioned herein, Plaintiff has in force a confidential 25 digit alphanumeric code designed to control access to its Copyrighted Software. It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement (EULA) and pays the standard market fee that access to the licensed product is permitted without time and feature limitations. When adherence is satisfied Plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate key enabling such access to the Copyrighted Software.

61. The key and the code confirming its validity are technological measures for the purpose of protecting Plaintiff's Copyrighted Software. To gain access requires knowledge of the 25 digits issued by Plaintiff. It is intended to exclude those who have not obtained a paid license from accessing the unlimited functionality of the Copyrighted Software.

62. Defendants circumvented this technological access-control measure to obtain unlicensed access to the Copyrighted Software multiple times.

63. As a consequence of Defendants' unlawful and unauthorized circumvention of Plaintiff's measures, Plaintiff has sustained damages as set forth herein.

64. The use of circumvention device to gain access is an intentional and knowledgeable act by the Defendants. It is therefore willful and subjects Defendants to the maximum allowed statutory damages of $2,500 per act of circumvention. Alternatively, Plaintiff is entitled to actual damages for profits attributable to the acts of circumvention per 17 U.S.C. § 1203(c)(2), according to proof at time of trial. Said statutory or actual damages being in addition to that awarded for copyright infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court issue the following:

A. Defendants be enjoined permanently from appropriating, using or otherwise benefiting from Plaintiff's Copyrighted Software identified above without the express written approval of Plaintiff or its delegate;

B. Defendants be ordered to pay Plaintiff all damages due to it pursuant to 17 U.S.C. § 504 for their unlawful acts, with pre-judgment interest.

C. Defendants be ordered to pay Plaintiff all damages due to it pursuant to 17 U.S.C. § 1201 *et seq.* for their unlawful acts, with pre-judgment interest.

D. Defendants be ordered to pay Plaintiff all of its costs of suit, reasonable attorney fees and interest at legal rates pursuant to 17 U.S.C. § 505.

E. Such other relief as the Court deems just under the circumstances.

DATED: March 19, 2014

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Joshua S. Hodas
Attorneys for Plaintiff,
VBCONVERSIONS LLC

13
COMPLAINT

4816-9972-9175.2

## DEMAND FOR TRIAL BY JURY

PLEASE TAKE NOTICE that Plaintiff VBConversions, LLC hereby demands a jury trial in this action.

DATED: March 19, 2014

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: *(signature)*
Joshua S. Hodas
Attorneys for Plaintiff,
VBCONVERSIONS LLC

14
COMPLAINT

4816-9972-9175.2